# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **ISAAC E. STEWART,**<br>　　**Address:**<br>　　17617 W. 111th Place<br>　　Olathe, Kansas 66061<br><br>　　**Plaintiff,**<br><br>　v.<br><br>**FORD MOTOR COMPANY,**<br>　　**Serve at:**<br>　　Registered Agent<br>　　The Corporation Company, Inc.<br>　　112 SW 7th Street, Suite 3C<br>　　Topeka, Kansas 66603<br><br>　　**Defendant.** | **Case No.**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## COMPLAINT

COMES NOW, Plaintiff Isaac E. Stewart ("Stewart"), and for his Complaint against Ford Motor Company ("Defendant" or "Ford"), states and alleges as follows:

## PARTIES

1. Stewart is a citizen of the United States, presently residing in Johnson County, Kansas.

2. At all times relevant to this action, Stewart was employed by Defendant.

3. Defendant is a for profit company, organized under the laws of Delaware, with its principle place of business located in Michigan.

4. At all times relevant to this action, Defendant was authorized to conduct business in Kansas and was doing business in Kansas.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Defendant because it conducts business in Kansas and because Stewart's alleged injuries arise out of Defendant's business operations in Kansas.

6. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 because this Complaint arises under federal law.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Stewart's claims occurred within this Court's territorial jurisdiction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On or about January 30, 2018, Stewart filed a Charge of Discrimination ("Charge") against Defendant with the Equal Employment Opportunity Commission ("EEOC").

9. On May 30, 2018, the EEOC issued Stewart a Notice of Right to Sue with respect to the Charge, and this lawsuit was filed within 90 days of the issuance of the Notice of Right to Sue.

10. The aforesaid Charge, and any amendments made thereto, provided the EEOC with an opportunity to investigate the full scope of the controversy between the parties.

11. Stewart has satisfied all prerequisites to the institution of this action.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12. Paragraphs 1 through 11 above are incorporated herein by reference.

13. Stewart was hired by Ford as a temporary Parts Order Processor in May 2016.

14. Stewart worked at Ford's Distribution Center located at 8515 Hedge Lane Terrace, Lenexa, Kansas 66227.

15. According to Ford, "[a]fter being given a conditional offer of employment, [Stewart] was required to complete a pre-employment medical evaluation" which included a Health History Form.

16. According to Ford, the Health History Form inquired about Stewart's medical health history and contained questions about prior operations and disabilities.

17. No issues were raised by Ford with respect to Stewart's pre-employment medical evaluation, and Stewart commenced his employment.

18. In August 2016, Stewart was offered a regular full-time role with the company, along with a pay raise and benefits.

19. In August 2017, Stewart received another pay raise for satisfactory work performance.

20. In the fall of 2017, Stewart began to suffer pain in his left ankle.

21. Stewart had previously broken his left ankle and underwent surgery back in approximately 2005.

22. In November 2017, Stewart informed his union representative about his ankle and the possibility that he may need some time off. The union representative notified Ford about Stewart's condition and obtained FMLA paperwork for him to complete.

23. On or about November 30, 2017, Stewart faxed a form titled "Medical Certification Form for Hourly and Salaried Employees – Request for Leave of Absence for Employee's Own Health Condition" to his physician.

24. On or about December 7, 2017, Stewart's physician completed the form, which stated that Stewart had "left lower ankle pain and swelling, chronic intermittent due to old injury and surgery with hardware."

25. The form said Stewart's condition could cause episodic flare-ups periodically preventing him from performing his job functions, and that it would be medically necessary for him to be absent from work during the flare-ups (due to pain and swelling that would require him to be off his feet). The form estimated that the frequency of the flare-ups and the duration of related incapacity over the next 6 months to be 1 time per 2 weeks for 1 day per episode.

26. According to Ford, the company received the FMLA certification form from Stewart's physician on or about January 2, 2018.

27. Stewart did not hear anything from Ford about his FMLA paperwork and soon followed up. When Stewart asked his supervisor, Tony Banks, about the status of his FMLA paperwork, Banks said he would check on it and be back in touch.

28. Eventually, Banks approached Stewart and gave him a handwritten note with the contact information for a "Dr. Lakind." Banks told Stewart to give the doctor a call because there were questions about his FMLA paperwork.

29. Upon information and belief, Dr. Lakind is the Medical Director for the Lenexa Distribution Center.

30. Stewart contacted Dr. Lakind the following day. During this call, Dr. Lakind interrogated Stewart about his FMLA paperwork, the circumstances and history of his left ankle condition, and the answers he submitted to Ford previously concerning his medical health history.

31. According to Ford, Dr. Lakind believed Stewart had provided "false information" on the Health History Form previously submitted to Ford, and he reported this belief to Ford's Human Resources Department.

32. On or about January 11, 2018, Stewart was called into a meeting with his union representative, Banks, and Bank's supervisor (Brent).

33. During this meeting, Stewart was told that he was being terminated from employment for his failure to disclose certain medical information related to his FMLA request.

## COUNT I
### Violation of the Americans with Disabilities Act ("ADA")
### Discrimination Based on Disability
### 42 U.S.C. § 12101, *et seq*.

34. Paragraphs 1 through 33 above are incorporated herein by reference.

35. At all times relevant to this action, Defendant was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

36. At all times relevant to this action, Defendant was an "employer" within the meaning of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101, *et seq*.

37. Under the ADA, no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

38. The term "discriminate against a qualified individual on the basis of disability" includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A).

39. At all times relevant to this action, Stewart had a "disability" within the meaning of the ADA due to his left ankle condition.

40. At all times relevant to this action, Stewart was a "qualified individual" able to perform the essential functions of his job with or without accommodation.

41. Defendant knew of Stewart's disability.

42. During his employment, Stewart's co-workers and supervisor(s), while acting within the scope and course of employment, intentionally discriminated against Stewart with respect to the terms, conditions, and/or privileges of employment, because of his disability in violation of 42 U.S.C. § 12101, *et seq.*

43. During his employment, Stewart sought reasonable accommodation or access to certain benefits from Defendant in the form of continued employment, a modified work schedule, an intermittent leave of absence, and/or other requests for accommodation.

44. Defendant failed to consider and/or provide reasonable accommodations for Stewart's disability. Instead, Defendant terminated Stewart.

45. Defendant failed to engage in the interactive process to determine whether a reasonable and suitable accommodation existed which would permit Stewart to perform the essential functions of his position, or whether Stewart could be reassigned to an open position.

46. Stewart's disability was a motivating factor or determining factor or otherwise played a part in Defendant's decision to take the aforementioned actions against Stewart.

47. Defendant knew, or should have known, of the discrimination described herein, but failed to take appropriate remedial action.

48. Defendant, through its agents or employees, engaged in discriminatory practices with malice or reckless indifference to Stewart's federally protected rights. Stewart is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

49. As a direct and proximate cause of the actions and conduct set forth herein, Stewart suffers and will continue to suffer damages, emotional distress, and inconvenience.

50. WHEREFORE, Stewart requests that this Court enter judgment in his favor and against Defendant for such damages, actual, compensatory, and/or punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as may be appropriate to effectuate the purposes of the ADA.

## COUNT II
### Violation of the Americans with Disabilities Act ("ADA")
### Failure to Accommodate
### 42 U.S.C. § 12101, *et seq*.

51. Paragraphs 1 through 50 above are incorporated herein by reference.

52. Stewart was a qualified individual with a disability; Defendant was aware of his disability; Stewart requested a reasonable accommodation for his disability; and Defendant failed to reasonably accommodate Stewart's disability.

## COUNT III
### Violation of the Americans with Disabilities Act ("ADA")
### Retaliation / Interference
### 42 U.S.C. § 12101, *et seq*.

53. Paragraphs 1 through 52 above are incorporated herein by reference.

54. "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

55. During his employment, Stewart engaged in an activity that the ADA protects: Stewart sought reasonable accommodation or access to certain benefits from Defendant in the form of continued employment, a modified work schedule, an intermittent leave of absence, and/or other requests for accommodation.

56. In response to Stewart's protected activities, Defendant took adverse action against him. Defendant denied his request for accommodations, denied his request for FMLA leave, and disclosed confidential medical information to its employees in violation of the ADA.

57. Defendant's actions were meant to "chill" an employee's willingness to exercise his or her statutory rights under the ADA.

58. A causal link exists between Stewart's protected activity and Defendant's adverse actions.

59. Stewart's protected activities were a motivating factor or determining factor or otherwise played a part in Defendant's decision to take the aforementioned actions against Stewart.

60. Defendant knew, or should have known, of the retaliation and interference described herein, but failed to take appropriate remedial action.

61. Defendant, through its agents or employees, engaged in retaliatory practices with malice or reckless indifference to Stewart's federally protected rights. Stewart is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

62. As a direct and proximate cause of the actions and conduct set forth herein, Stewart suffers and will continue to suffer damages, emotional distress, and inconvenience.

63. WHEREFORE, Stewart requests that this Court enter judgment in his favor and against Defendant for such damages, actual, compensatory, and/or punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as may be appropriate to effectuate the purposes of the ADA.

### COUNT IV
### Violation of the Americans with Disabilities Act ("ADA")
### Illegal Medical Examinations and Inquiries / Violation of Duty of Confidentiality
### 42 U.S.C. § 12101, *et seq.*

64. Paragraphs 1 through 63 above are incorporated herein by reference.

65. The ADA's "prohibition against discrimination … shall include medical examinations and inquiries." 42 U.S.C. § 12112(d)(1).

66. The ADA authorizes employers to "require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant and may condition the offer of employment on the results of such examination." 42 U.S.C. § 12112(d)(3).

67. However, with limited exceptions, the ADA mandates that the employer keep strictly confidential the results of a post-job-offer examination. The examination is allowed only if information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record. 42 U.S.C. § 12112(d)(3).

68. Additionally, an employer shall not require a medical examination and shall not make inquiries of a current employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination is shown to be job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4).

69. According to Ford, it made a job offer to Stewart and conditioned the offer on the results of an employment entrance examination. Stewart participated in the required examination and provided information about his medical conditions and medical history.

70. However, information obtained by Defendant regarding the medical condition or history of Stewart was not collected and maintained on separate forms and in separate medical files and was not treated as a confidential record as required by the ADA.

71. Instead, such confidential records were disclosed to unauthorized management-level employees, in violation of the ADA.

72. Defendant also made inquiries of Stewart as to whether he was an individual with a disability and as to the nature or severity of his disability, and such inquiries were not job-related and consistent with business necessity, in violation of the ADA.

73. Defendant, through its agents or employees, engaged in such practices with malice or reckless indifference to Stewart's federally protected rights.  Stewart is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from engaging in similar conduct.

74. As a direct and proximate cause of the actions and conduct set forth herein, Stewart suffers and will continue to suffer damages, emotional distress, and inconvenience.

75. WHEREFORE, Stewart requests that this Court enter judgment in his favor and against Defendant for such damages, actual, compensatory, and/or punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as may be appropriate to effectuate the purposes of the ADA.

### COUNT V
### Violation of the Family and Medical Leave Act of 1993
### 29 U.S.C. § 2615(a)(1) – FMLA Interference

76. Paragraphs 1 through 75 above are incorporated herein by reference.

77. At all relevant times, Stewart was employed for at least 12 months by Defendant, the employer to whom leave was requested, and was employed for at least 1,250 hours of service with Defendant during the 12-month period immediately preceding his requested leave, and was therefore an "eligible employee" as that term is defined under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611(2).

78. At all relevant times, Defendant was engaged in commerce or in any industry or activity affecting commerce, and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, and was therefore an "employer" as that term is defined by the FMLA, 29 U.S.C. 2611(4)(A)(i).

79. The FMLA entitles an employee "to a total of 12 workweeks of leave during any 12-month period" if the employee suffers from a "serious health condition." 29 U.S.C. § 2612.

80. An interference of rights occurs when an employer interferes with, restrains, or denies the exercise or attempted exercise of rights or benefits under the FMLA. *See* 29 U.S.C. § 2615(a)(1).

81. In addition, "[r]ecords and documents relating to certifications, recertifications or medical histories of employees or employees' family members, created for purposes of FMLA, shall be maintained as confidential medical records in separate files/records from the usual personnel files." 29 C.F.R. § 825.500(g).

82. On January 11, 2018, the date Ford denied Stewart's request for FMLA leave, and terminated his employment, Stewart was eligible for FMLA leave.

83. In denying Stewart's request for FMLA leave, impermissibly disclosing his protected and confidential medical information, and terminating his employment, Defendant wrongfully and illegally interfered with Stewart's federally protected civil rights under the FMLA,

including his right to leave under the FMLA, the right to confidentiality of medical information, and the right to be restored to his position at the end of FMLA leave.

84. Stewart was an eligible employee for FMLA leave; Defendant is an employer under the FMLA; Stewart was entitled to leave under the FMLA; Stewart provided sufficient notice to Defendant of his intent to take FMLA leave; and Defendant interfered with and denied Stewart FMLA benefits to which he was entitled.

85. As a direct and proximate result of Defendant's actions and/or inactions, Stewart has been deprived of income, as well as other monetary and non-monetary benefits.

86. The actions of Defendant, including its agents and/or employees, in terminating Stewart's employment and depriving him of his federally protected civil rights under the FMLA constitute a willful violation of the FMLA and therefore entitle Stewart to recover liquidated damages.

87. Stewart is entitled to recover from Defendant his reasonable attorneys' fees and costs.

88. WHEREFORE, Stewart requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

### COUNT VI
**Violation of the Family and Medical Leave Act of 1993**
**29 U.S.C. § 2615(a)(2) – FMLA Retaliation**

89. Paragraphs 1 through 88 above are incorporated herein by reference.

90. The FMLA prohibits an employer from "discharge[ing] or in any other manner discriminat[ing] against any individual" for asserting his rights under the FMLA. 29 U.S.C. § 2615(a)(2).

91. Stewart applied for and requested FMLA benefits from Defendant, and thereby engaged in protected activity pursuant to the FMLA, 26 U.S.C. 2615(a)(2).

92. Stewart was an eligible employee for FMLA leave; Defendant is an employer under the FMLA; Stewart was entitled to leave under the FMLA; Stewart provided sufficient notice to Defendant of his intent to take FMLA leave; and Defendant retaliated against Stewart by taking materially adverse actions against Stewart because of his attempt to exercise his rights under the FMLA.

93. Defendant's actions in denying Stewart's request for FMLA leave, impermissibly disclosing his protected and confidential medical information, and subsequently terminating his employment are actions that a reasonable employee would have found materially adverse.

94. A causal connection exists between Stewart's protected activities and the adverse actions.

95. The materially adverse actions taken against Stewart by Defendants occurred within short temporal proximity to Stewart's attempt to take leave under the FMLA.

96. As a direct and proximate result of Defendant's actions and/or inactions, Stewart has been deprived of income, as well as other monetary and non-monetary benefits.

97. The actions of Defendant, including its agents and/or employees, in terminating Stewart's employment and depriving him of his federally protected civil rights under the FMLA constitute a willful violation of the FMLA and therefore entitle Stewart to recover liquidated damages.

98. Stewart is entitled to recover from Defendant his reasonable attorneys' fees and costs.

99. WHEREFORE, Stewart requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## DESIGNATION OF PLACE OF TRIAL

Stewart hereby designates the federal court in Kansas City, Kansas, as the place of trial.

## JURY DEMAND

Stewart hereby requests a trial by jury of all triable issues alleged herein.

Dated: August 22, 2018

Respectfully submitted,

McCLELLAND LAW FIRM
*A Professional Corporation*

By: /s/ Ryan L. McClelland
Ryan L. McClelland, MO Bar #59343
D. KS Bar #78128
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com

ATTORNEYS FOR PLAINTIFF